IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Percy Bolden, | ) |
| | ) |
| *Plaintiff* | ) |
| | ) No. _____ |
| -*vs*- | ) |
| | ) *(Jury Demand)* |
| City of Chicago, Phillip Cline, | ) |
| Debra Kirby, Ronald Watts, Brian | ) |
| Bolton, Robert Gonzalez, Manuel | ) |
| Leano, Kallatt Mohammed, | ) |
| Douglas Nichols Jr., and Elsworth | ) |
| Smith Jr., | ) |
| | ) |
| *Defendants* | ) |

## COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

### I.    Parties

2. Plaintiff Percy Bolden is a resident of the Northern District of Illinois.

3. Defendant City of Chicago is an Illinois municipal corporation.

4. Defendants Ronald Watts was at all relevant times acting under color of his office as a Chicago police officer. Plaintiff sues Watts in his individual capacity only.

5.     Defendants Brian Bolton, Robert Gonzalez, Manuel Leano, Kallatt Mohammed, Douglas Nichols Jr., and Elsworth Smith Jr. (the "individual officer defendants") were at all relevant times acting under color of their offices as Chicago police officers. Plaintiff sues the individual officer defendants in their individual capacities only.

6.     Defendant Philip Cline was at all relevant times Superintendent of the Chicago Police Department. Plaintiff sues Cline in his individual capacity only.

7.     Defendant Debra Kirby was at all relevant times the Assistant Deputy Superintendent of the Chicago Police Department, acting as head of the Chicago Police Department Internal Affairs Division. Plaintiff sues Kirby in her individual capacity only.

## II.    Overview

8.     Plaintiff Bolden is one of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

9.     As of the date of filing, more than 150 individuals who were framed by the Watts Gang have had their convictions vacated by the Circuit Court of Cook County.

10.   Many victims of the Watts Gang are currently prosecuting federal lawsuits. Pursuant to an order of the Court's Executive Committee dated

July 12, 2018, these cases have been coordinated for pretrial proceedings under the caption, *In Re: Watts Coordinated Pretrial Proceedings*, 19-cv-01717.

11.  The Executive Committee's Order states that additional cases, such as this one, filed with similar claims and the same defendants shall be part of these coordinated pretrial proceedings.

12.  The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

13.  High-ranking officials within the Chicago Police Department, including but not limited to defendants Cline and Kirby, were aware of the Watts Gang's criminal enterprise but failed to take any action to stop it.

14.  The Chicago Police Department's official policies and customs of failing to discipline, supervise, and control its officers, as well as its code of silence, were a proximate cause of the Watts Gang's criminal enterprise.

15.  Watts Gang officers arrested plaintiff without probable cause, fabricated evidence, and framed plaintiff for a drug offense.

16.  Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, the Circuit Court of

Cook County vacated plaintiff's conviction and granted plaintiff a certificate of innocence.

17. Plaintiff brings this lawsuit to secure a remedy for illegal incarceration, illegal restraints on liberty, and other injuries, all of which were caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police Department's defective discipline policy.

### III. False Arrest and Illegal Prosecution of Plaintiff

18. On June 20, 2006, plaintiff was arrested by the individual officer defendants while he was playing chess at Madden Park in Chicago.

19. At the time the officers arrested plaintiff:

    a. None of the individual officer defendants had a warrant authorizing the arrest of plaintiff;

    b. None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff;

    c. None of the individual officer defendants had observed plaintiff commit any offense; and

    d. None of the individual officer defendants had received information from any source that plaintiff had committed an offense.

-4-

20. After arresting plaintiff, the individual officer defendants conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

21. The false story fabricated by the individual officer defendants included their concocted claim that they saw plaintiff drop a bag of drugs and run from them.

22. The acts of the individual officer defendants in furtherance of their scheme to frame plaintiff include the following:

      a. One or more of the individual officer defendants prepared police reports containing the false story, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights;

      b. One or more of the individual officer defendants attested to the false story through the official police reports, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights; and

      c. One or more of the individual officer defendants communicated the false story to prosecutors, and each of the other

individual officer defendants failed to intervene to prevent the violation of plaintiff's rights.

23. The individual officer defendants committed the above-described wrongful acts knowing that the acts would cause plaintiff to be held in custody and falsely prosecuted for an offense that had never occurred.

24. Defendant Watts was one cause of the above-described wrongful acts through his direction, encouragement, and facilitation of similar wrongful acts by the individual officer defendants.

25. As the leader of the above-described criminal enterprise, Watts trained the individual officer defendants to commit the above-described wrongful acts, encouraged the individual officer defendants to commit the above-described wrongful acts, and failed to intervene to prevent the violation of plaintiff's rights.

26. Plaintiff was charged with a drug offense because of the wrongful acts of defendant Watts and the individual officer defendants.

27. Plaintiff knew that it would be impossible to prove that the individual officer defendants had concocted the charges.

28. Accordingly, even though he was innocent, plaintiff pleaded guilty to a drug offense on September 14, 2006, and was sentenced to serve 30 months in the Illinois Department of Corrections.

29.  Plaintiff was deprived of liberty because of the above-described wrongful acts of defendant Watts and the individual officer defendants.

### IV.   Plaintiff's Exoneration

30.  Plaintiff challenged the above-described wrongful conviction after learning that federal prosecutors and lawyers for other wrongfully convicted individuals had discovered the Watts Gang's criminal enterprise.

31.  On April 22, 2022, the Circuit Court of Cook County vacated plaintiff's conviction and granted the State's request to *nolle prosequi* the case.

32.  On June 7, 2022, the Circuit Court of Cook County granted plaintiff a certificate of innocence.

### V.   Plaintiff's Arrest and Prosecution Were Part of a Long-Running Pattern Known to High-Ranking Officials within the Chicago Police Department

33.  Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the Chicago Police Department had received many civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

34.  Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

35. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, defendants Cline and Kirby knew about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang and knew that criminal investigators had corroborated these allegations.

36. Defendants Cline and Kirby also knew, before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, that, absent intervention by the Chicago Police Department, Watts and his gang would continue to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges.

37. The Internal Affairs Division of the Chicago Police knew about the lawlessness of Watts and his gang by 2004.

38. Defendants Cline and Kirby had the power and the opportunity to prevent Watts and his gang from continuing to engage in the above-described wrongdoing.

39. Defendants Cline and Kirby deliberately chose to turn a blind eye to the wrongdoing by Watts and his gang.

40. As a direct and proximate result of the deliberate indifference of defendants Cline and Kirby, Watts and his gang continued to engage in

robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**VI. Official Policies and Customs of the Chicago Police Department Were the Moving Force behind the Defendants' Misconduct**

41. At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated, encouraged, and condoned the defendants' misconduct.

**A. Failure to Discipline**

42. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

43. Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

44. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

45. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the individual officer defendants had been the subject of numerous formal complaints of official misconduct.

46. As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

### B. Code of Silence

47. At all relevant times, the Chicago Police Department maintained a code of silence that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

48. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

49. This code of silence facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

50. Consistent with this code of silence, the few people within the Chicago Police Department who stood up to Watts and his gang or who attempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

51. Watts and his gang are not the first Chicago police officers whom the City of Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

52. One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

53. Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

54. Finnigan and his crew engaged in their misconduct at around the same time that plaintiff was subjected to the abuses described above.

55. Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

56. Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

57. Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

58. Defendant Mohammed pleaded guilty in 2012.

59. Defendant Watts pleaded guilty in 2013.

60. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

61. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

62. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

63. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

64. On March 29, 2019, then-Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

65. In October 2020, Chicago Police Superintendent David Brown acknowledged in public comments that the code of silence continues to exist.

66. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, Superintendent Brown, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrest, detention, and prosecution described above.

67. As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

## VII.  Claims

68. As a result of the foregoing, all of the defendants caused plaintiff to be deprived of rights secured by the Fourth and Fourteenth Amendments.

69. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

70. Plaintiff hereby demands trial by jury.

WHEREFORE plaintiff requests that appropriate compensatory and punitive damages be awarded against the individual defendants and that appropriate compensatory damages only be awarded against defendant City of Chicago, and that the Court award fees and costs against defendants.

/s/  Joel A. Flaxman
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
KENNETH N. FLAXMAN P.C.
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200
jaf@kenlaw.com
*attorneys for plaintiff*

-15-